POOLER, Circuit Judge,
concurring in part and dissenting in part.
I respectfully dissent from the majority’s conclusion that the kindergarten teacher in this case is entitled to qualified immunity from suit for her alleged deliberate indifference to all but a single incident of physical harassment that one of her students allegedly suffered while he was in her class.
Nicholas DiStiso, a kindergarten student who was the only black child in his class, came home from school one day and told his mother that a girl had slapped him and called him a “nigger.”[1] His mother was infuriated and reported the incident to her son’s teacher, Jacquelyn Uccello. The abuse, however, was unrelenting. Over the course of the school year, Nicholas told his father on as many as fifteen occasions that children at school had called him a “nigger.” The boy’s mother complained several times to her son’s teacher that his classmates were calling him “the ‘N’ word, dirty hands, [and] blacky.”
In addition to informing the teacher that Nicholas was being called vulgar racial slurs by children at school, his mother reported repeated incidents in which her son was physically abused by his classmates. Specifically, the boy’s mother reported to the teacher that Nicholas had been pinched, kicked, bitten, spit on in the face, and hit by his peers. His mother explained that her son would “usually ... comet ] home” from school with “dry tears in his eyes.” On one occasion, Nicholas “came home with a knot so huge on his knee that he should have been brought to the nurse.” His father testified that he and his wife would see black-and-blue marks on their child’s body.
Despite this striking evidence, the majority concludes that no reasonable jury could possibly find that this young boy’s teacher knew that the physical abuse this young boy suffered at the hands of his classmates, aside from the slapping incident, was racially motivated because the teacher was never explicitly told that the students who abused Nicholas did so because he was black and because there were no other circumstances that could possibly have made clear to this teacher that the abuse was motivated by his race. I disagree.
*252 While the majority dismisses the repeated physical abuse at issue in this case as “commonplace” and “routine,” Majority Op. at 247-48, 248, I believe that a jury could conclude that the serious and sustained abuse allegedly suffered by this little boy was anything but ordinary. Moreover, his teacher had specifically been told on multiple occasions that this particular child — the only black child in his class— had been called vicious racial epithets by his classmates, and on one occasion had even been told that a girl in his class slapped him in the face and called him a racial slur. In other words, Uccello had been told that the racially-motivated verbal abuse had, at least on one occasion, escalated into a physical assault.
In this context, I believe a jury could conclude that this boy’s teacher did not need to be explicitly told that subsequent acts of physical abuse — which a jury might find were far from commonplace — were similarly motivated by the boy’s race in order to conclude that he was in fact being harassed, both physically and verbally, because he was black. Put simply, I believe that a jury could find that this teacher used her common sense and connected the dots. See Gant ex rel. Gant v. Wallingford Bd. of Educ., 195 F.3d 134, 141 n. 6 (2d Cir.1999) (“Of course, a showing that the defendant ‘should have known’ can, in some circumstances, create an inference— at least sufficient to raise a genuine issue — that the defendant did know.”).
For the foregoing reasons, I am unable to agree with the majority’s conclusion that no reasonable jury could find that Uccello was actually aware that the subsequent physical abuse Nicholas reportedly suffered, following the slapping incident, was racially-motivated. Accordingly, I do not believe that Uccello is entitled to qualified immunity from liability for deliberate indifference to either the verbal or the physical harassment allegedly suffered by Nicholas in kindergarten.[2]

. Throughout this opinion, given the procedural posture of the case, I present and “constru[e] the evidence in the light most favorable to the [plaintiff] and draw[] all reasonable inferences in [her] favor.” Allianz Ins. Co. v. Lemer, 416 F.3d 109, 113 (2d Cir. 2005).

. I assume, arguendo, as the majority does, that these defendants should be entitled to qualified immunity unless there is a genuine issue of material fact as to whether they were deliberately indifferent to racial harassment that was “severe, pervasive, and objectively offensive,” Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 633, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999), given our decision in Gant not to address the question of whether the standard articulated in Davis applied to claims that a student's constitutional rights under the Equal Protection Clause were violated, see Gant, 195 F.3d at 141 n. 5 ("We need not — and do not — decide whether mere name-calling is insufficient in the equal protection setting as well....”). Nonetheless, I believe that a reasonable jury could conclude that the subsequent physical abuse at issue here was sufficiently severe and pervasive within the meaning of Davis.